Theresa L. SHEPPARD, Plaintiff,

v.

RIVERVIEW NURSING CENTRE, INC., Defendant.

Civ. A. No. S–93–2663.

United States District Court,
D. Maryland.

Dec. 19, 1994.

Donald N. Rothman, Bradford W. Warbasse, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for plaintiff.

Jeffrey Rockman, Astroth, Serotte, Rockman & Wescott, Paul M. Vettori, Kenny, Vettori & Robinson, P.A., Baltimore, MD, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This case is before the Court on plaintiff's motion for an award of attorney's fees and costs. Plaintiff has requested a total award of $44,500. Defendant opposes this motion and argues that the plaintiff is not entitled to recover any attorney's fees. No oral hearing on this matter is necessary. Local Rule 105.6 (D.Md.).

### I. *Factual Background*

Plaintiff filed this suit in September 1993 alleging violations of the Civil Rights Act of 1964, commonly known as Title VII. She alleged that she was laid off in April 1992 by the defendant because she was pregnant. Approximately five weeks after her suit was filed, the defendant made a $5,000 offer of judgment under Federal Rule of Civil Procedure 68. The offer included "costs and attorney's fees accrued" as of the date of the offer. The plaintiff refused this offer.

After a four-day trial which began on October 31, 1994, the jury found that the plaintiff's pregnancy was a motivating factor in the defendant's decision to lay her off. The jury also found, however, that the defendant would have selected the plaintiff for the layoff even in the absence of the unlawful motive—*i.e.*, even if the defendant had not considered her pregnancy in making its decision. In light of the verdict and pursuant to the Court's instructions, the jury awarded no compensatory damages, and the punitive damages phase of the trial was not reached. In accordance with 42 U.S.C. § 2000e-5(g)(2)(B)(ii), the Court awarded no backpay. The Court also denied the plaintiff's request for injunctive relief, finding no danger of a continuing violation of the plaintiff's right to be free from illegal discrimination. Finally, the Court entered a declaratory judgment in the plaintiff's favor in accordance with the jury's finding that her pregnancy was a motivating factor in the defendant's decision to lay her off. Plaintiff's motion for a new trial was later denied.

## II. *Legal Background*

This Title VII case is one of the first going to trial before this Court to be governed by the Civil Rights Act of 1991. Pub.L. No. 102-166, 105 Stat. 1071 (1991) [hereinafter 1991 Act]. The 1991 Act represents a response to a perceived need for expanded remedies under Title VII and makes compensatory and punitive damages available to victims of intentional employment discrimination. *See* 42 U.S.C. § 1981a; H.R.Rept. No. 102-40(II), 102nd Cong., 1st Sess., at 24-30 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 694, 717-22. Another important provision of the 1991 Act, now codified at 42 U.S.C. § 2000e-2(m), applies to so-called "mixed-motive" or "same-decision" cases. This provision was designed to overturn the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104

L.Ed.2d 268 (1989). In *Price Waterhouse*, the Supreme Court held that, even where an employer relies in part on an impermissible motive in making an employment decision, the employer would not be liable for violating Title VII if it could prove that it would have made the same decision in the absence of the prohibited motivation.

Congress modified this outcome. The 1991 Act provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). In other words, an employer has violated Title VII if any of the prohibited criteria played any role at all in the disputed employment decision. However, if legitimate factors also motivated the decision and the employer can demonstrate that the same decision would have been made if it had not relied on the impermissible motivating factor, the damages that the plaintiff may recover for the Title VII violation are very limited. The plaintiff may not recover backpay, compensatory damages or punitive damages, and the court may not issue any order requiring any admission, reinstatement, hiring, promotion, or payment. 42 U.S.C. § 2000e-5(g)(2)(B)(ii). The only remedies available are declaratory relief, limited types of injunctive relief, and attorney's fees and costs. 42 U.S.C. § 2000e-5(g)(2)(B)(i).

## III. *Controlling Statute and Other Attorney's Fee Provisions*

■ In light of the jury's findings that the plaintiff's pregnancy was a motivating factor in the defendant's decision to lay her off and that the defendant would have made the same decision in the absence of the impermissible factor, 42 U.S.C. § 2000e-5(g)(2)(B) [1] governs the relief available to the

---

1. 42 U.S.C. § 2000e-5(g)(2)(B) provides,

   On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

   (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m),
   (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring,

plaintiff and controls this dispute over attorney's fees. Defendant's contention that 42 U.S.C. § 1988[2] governs because the plaintiff sought relief under 42 U.S.C. § 1981a in her complaint lacks merit. As described above, section 1981a makes compensatory and punitive damages available to victims of intentional discrimination prohibited by Title VII. In this case, however, the plaintiff is precluded from recovering such damages by 42 U.S.C. § 2000e–5(g)(2)(B); therefore, section 1981a is inapplicable and section 1988 does not govern her claim for attorney's fees. Plaintiff's claim is governed by section 2000e–5(g)(2)(B), which specifically addresses the relief available in same-decision cases.

■ The defendant argues in the alternative that the general Title VII fee-shifting provision, 42 U.S.C. § 2000e–5(k),[3] governs this case. Under this section, a prevailing party in "any" Title VII action may be awarded attorney's fees. 42 U.S.C. § 2000e–5(k). It is axiomatic that where two statutory provisions apply to a given situation, one specific and one general, the more specific one controls. As the Supreme Court has explained, "[I]t is a basic principle of statutory construction that a specific statute ... controls over a general provision ... particularly when the two are interrelated and closely positioned, both in fact being parts of [the same act]." *HCSC–Laundry v. United States*, 450 U.S. 1, 6, 101 S.Ct. 836, 839, 67

L.Ed.2d 1 (1980) (per curium). *See also Farmer v. Employment Security Comm'n of North Carolina*, 4 F.3d 1274, 1284 (4th Cir. 1993).

Section 2000e–5(g)(2)(B), unlike section 2000e–5(k), applies only to mixed-motive Title VII cases in which the defendant proves that the same decision would have been made in the absence of the discriminatory motive. The jury in this case made precisely the factual determination described by the specific statute. Consequently, the relief available in this action is determined solely by reference to the specifically applicable statute, section 2000e–5(g)(2)(B).

■ Section 2000e–5(g)(2)(B), while authorizing recovery of attorney's fees and costs in same-decision cases, also contains language limiting such fees and costs to those "demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) . . . ." 42 U.S.C. § 2000e–5(g)(2)(B)(i). This restrictive language does not apply to a case such as this one, in which there is only one claim of discrimination, which turns out to be a mixed-motive claim, ever at issue in the lawsuit.[4]

## IV. *Calculating Plaintiff's Attorney's Fees and Costs*

The plaintiff claims she incurred attorney's fees in the amount of $80,899.50 and costs of

---

promotion, or payment, described in subparagraph (A).

**2.** 42 U.S.C. § 1988(b) provides in relevant part,

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs.

**3.** 42 U.S.C. § 2000e–5(k) provides,

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

**4.** The passage may have more force in cases in which a plaintiff brings more than one claim of discrimination—for instance, a case alleging nu-

merous instances of discriminatory failure to hire or promote—and in which the jury ultimately finds that, with respect to some of the claims, the employer would have made the same decision in the absence of the illegal motivating factor. Under 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k), a party who "prevails" on at least one claim under some circumstances may receive attorney's fees for work on related claims on which it was unsuccessful. *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983); *Goodwin v. Metts*, 973 F.2d 378, 381–83 (4th Cir.1992). A more restrictive rule may apply to successful claims under section 2000e–5(g)(2)(B) in light of this emphasis on attorney's fees and costs "directly attributable only" to pursuit of the mixed motive claim. The language stresses Congress' sensitivity to the principle of causation and the need to circumscribe the defendant's liability for actions it would have taken anyway. *See* H.R.Rept. No. 102–40(I), 102 Cong., 1st Sess., at 49 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 587; H.R.Rept. 102–40(II), 102 Cong., 1st Sess., at 19 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 712.

$4,509.74. The plaintiff has voluntarily reduced her request for attorney fees by approximately fifty percent, from $80,899.50 to $40,000.

■ Counsel for a party statutorily entitled to recover attorney's fees must exercise "billing judgment" and exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434, 103 S.Ct. at 1940 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980)); *Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir.1986). In this case, the plaintiff's motion for attorney's fees did not specifically exclude such hours, but instead reduced the overall dollar figure by a blanket fifty percent. Although the Court will grant the plaintiff's motion for attorney's fees in the amount of $40,000, a more refined analysis than that of the plaintiff is appropriate. *E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir.1990) (disapproving of brevity of court's analysis and noting that "courts must consider and discuss the twelve factors set forth in *Johnson*").

■■ The starting point for establishing the proper amount of an attorney's fee award is the number of hours reasonably expended, multiplied by a reasonable hourly rate. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir.1994). *See also Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). To determine the appropriate level of hours and rates, the Fourth Circuit has long applied the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See Barber v. Kimbrell*, 577 F.2d 216, 266 (4th Cir.1978) (adopting twelve factor test), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978); *Daly*, 790 F.2d at 1078 (Johnson factors are to be considered at the stage of setting reasonable rate and number of hours reasonably expended). The *Johnson* factors are 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Rum Creek Coal Sales*, 31 F.3d at 175, *citing Johnson*, 488 F.2d at 717–19.

■ After properly adjusting the claimed hours and rates to account for the twelve *Johnson* factors, these figures are multiplied together to produce the "lodestar," which is a presumptively reasonable attorney's fee award. *Daly*, 790 F.2d at 1078; *E.E.O.C. v. Service News Co.*, 898 F.2d at 965. *See also Blum*, 465 U.S. at 888, 104 S.Ct. at 1544; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (there is a strong presumption that the lodestar figure represents a reasonable fee). In exceptional circumstances where the plaintiff's degree of success is not accurately reflected in the number of reasonable hours allowed, the lodestar figure may also be adjusted to account for the results obtained. *Daly*, 790 F.2d at 1078; *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

### A. Reasonable Hourly Rates

■ A reasonable hourly rate is one set at "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895, 104 S.Ct. at 1547. The Fourth Circuit has recently explained that, "Market rates may be proved by rates in which clients normally and willingly pay the petitioning attorneys." *Rum Creek Coal Sales*, 31 F.3d at 175. The Court also has discretion to make factual findings based on personal knowledge of prevailing rates in the relevant market. *Id.* at 179.

In this case, plaintiff's attorneys charged the following average hourly rates during the pendency of the litigation:

| | |
|---|---|
| Donald N. Rothman | $254.77 |
| Robert C. Kellner | $210.00 |
| Bradford W. Warbasse | $166.24 |
| Judy A. Murphy | $75.00 |

The Court finds that the rate charged for Mr. Rothman's services in this case is excessive and does not reflect the prevailing market rate in Baltimore for civil rights attorneys. While Mr. Rothman has extensive litigation experience, plaintiff's petition does not indicate that he has any special expertise in the area of employment discrimination or civil rights matters generally. The Court will not mechanically apply rates which are charged by attorneys in complex civil matters to determine the proper hourly rate for a civil rights case. *Trimper v. City of Norfolk, VA.*, 846 F.Supp. 1295, 1305 (E.D.Va.1994). *See also Buffington v. Baltimore County, MD.*, 913 F.2d 113, 129 (4th Cir.1990) (experienced attorneys representing civil rights plaintiff not entitled to the same hourly rate normally charged by them in complex civil matters), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991); *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 737 (11th Cir.1988) (noting that "market rate for federal civil litigation is too over-inclusive" for setting hourly rates under § 1988). Accordingly, Mr. Rothman's hourly fee will be reduced to $200.00. This figure is reasonable in that it represents an amount slightly lower than that of Mr. Kellner, who is chairman of the employment law department at the plaintiff's law firm, yet still represents a substantial sum, as is justified by Mr. Rothman's general litigation experience. The Court is also guided by its own personal knowledge of market rates for experienced attorneys in the Baltimore area.

The fees charged by Mr. Warbasse and Mr. Kellner are reasonable in light of the rates prevailing in Baltimore for experienced attorneys. The record contains evidence, in the form of an affidavit from the comptroller of the plaintiff's law firm, that these rates are each attorney's customary fee for like work. Under *Rum Creek Coal,* 31 F.3d at 175, this

evidence is sufficient to establish the reasonableness of the rates. Because the defendant has produced no evidence tending to show that a lower rate actually prevails in the Baltimore market, the Court accepts plaintiff's rates as reasonable figures for these two attorneys.

Finally, the Court also accepts the hourly rate of $75.00 for work done by Ms. Murphy, a litigation paralegal with over twelve years of experience. Ms. Murphy's customary fee was discounted for this case, and the defendant does not dispute that it represents a reasonable charge for paralegal services.

### B. *Reasonable Number of Hours*

The Supreme Court has directed district courts to "exclude from the initial fee calculation hours that were not reasonably expended." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940 (internal quotations omitted). The Fourth Circuit's most recent discussion of the appropriate method to calculate attorney's fees directs the court to apply the twelve *Johnson* factors to the number of hours claimed by the plaintiff and to make adjustments as appropriate. *Rum Creek Coal,* 31 F.3d at 175. Accordingly, these factors will be considered below in conjunction with the Court's review of the attorney time and billing records submitted by the plaintiff.

#### 1) *Time and Labor Required*

In determining the appropriate number of hours for which plaintiff may recover attorney's fees, this first *Johnson* criteria is obviously the most important. In her motion[5] for attorney's fees, the plaintiff requests compensation for the following number of attorney work hours:

| | |
|---|---|
| Donald N. Rothman | 67.4 hours |
| Robert C. Kellner | 4.5 hours |
| Bradford W. Warbasse | 325.8 hours |
| Judy A. Murphy | 94.3 hours |

5. Contrary to the defendant's assertion, plaintiff's motion contains adequate detail and information to satisfy the requisites of Local Rule 109.2.B and *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Although an alternative format (one which included summaries of hours expended on various tasks) would have been far more helpful to the Court, the motion will not be dismissed as defective.

After reviewing the detailed billing records submitted in this case, the Court finds that most of the hours charged by plaintiff's attorneys were reasonable expenditures of time and are fairly compensable at their market rates. Nevertheless, certain reductions are appropriate.

As an initial matter, the Court notes that this is not a three-partner case. Plaintiff's attorneys' staffing of this case appears unnecessarily "top-heavy," a factor which is taken into account in the analysis that follows.

a. Mr. Rothman-  Hours claimed: 67.4
                 Hours allowed: 58.2

■■■ With respect to the work performed by Mr. Rothman, the Court finds that 9.2 of those hours were redundant or insufficiently documented. Specifically, Mr. Rothman claims compensation for 12 hours of "trial" on November 1, 1994, a day in which court was in session for no more than 6.5 hours. In the absence of any explanation at all for the remaining 5.5 hours, that time is disallowed as insufficiently documented. Mr. Rothman also claims compensation for 3.7 hours of preparation of two witness, Mary Lou Seymour and Ms. D'Antoni, on October 11, 1994, with Mr. Warbasse. Neither of these witnesses' testimony at trial was at all lengthy or complicated, and the Court finds that it was unnecessary and redundant for two highly paid partners to spend several hours jointly preparing them. Accordingly, Mr. Rothman's time is disallowed, while Mr. Warbasse's will be compensated.

The Court finds that the rest of Mr. Rothman's time is properly documented and reasonably spent. Defendant's contention that the plaintiff is not entitled to compensation for more than one attorney's services on this case is unfounded and somewhat disingenuous in light of its own staffing of the case in an analogous manner.

b. Mr. Kellner-  Hours claimed: 4.5
                 Hours allowed: 1.5

■■■ Given that highly paid partners performed all of the legal work on this case, including elementary legal research, and the total absence of any junior, less expensive attorneys, the Court feels that it is appropriate to strictly scrutinize the billing records to ensure that every hour charged at the partner billing rates was justified and an efficient use of time. This is particularly so in the case of Mr. Kellner's time. Mr. Kellner chairs the employment law department at plaintiff's law firm. Almost all of his time billed to this case seems to be devoted to conversations with Mr. Warbasse and review of Mr. Warbasse's work. Mr. Warbasse is an employment law partner with ten years of experience, whose time was billed at an average of $166.10 per hour in this case. If, as plaintiff argues, Mr. Warbasse's work is worth his substantial fee, much of Mr. Kellner's time on this case was redundant and unnecessary. For this reason, the 1.2 hours of Mr. Kellner's time which was devoted to reviewing Mr. Warbasse's work on the plaintiff's Opposition to Defendant's Motion for Summary Judgment will be disallowed. The .2 hours of Mr. Kellner's time devoted to discussing "w/BWW re statement of facts" will be disallowed for the same reason. The simple statement of facts in this case hardly required a collective $376.10 dollars per hour worth of legal talent.

Besides work which was redundant of Mr. Warbasse's, the Court finds a relatively significant amount of Mr. Kellner's time was spent on work which was redundant of Mr. Rothman's high priced efforts. For example, Mr. Rothman billed 1.2 hours for preparing closing arguments with Mr. Warbasse. It was unnecessary for Mr. Kellner also to spend .4 hours helping Mr. Warbasse to prepare his closing argument. Time spent by Mr. Kellner to "review opening statement" with Mr. Warbasse (estimated at .3 hours) and discuss "strategy" (.2 hours) and "jnov and attorneys fees" (.3 hours) with him is similarly redundant.

In addition, the entry for .2 hours on November 9, 1993, which reads simply "w/BWW," will be disallowed as insufficiently documented. Finally, another .2 hours will be deducted from the entry for November 30, 1993, attributed to "statistical analysis." This was a straightforward case alleging direct evidence of discrimination stemming from an incident in which five employees were laid off, three of whom were pregnant.

No "statistical analysis" at all—let alone any worth $210 an hour was necessary.

c. <u>Mr. Warbasse-</u>  Hours claimed: 325.8
                            Hours allowed: 314.1

▮▮▮ The Court finds that the majority of hours expended by Mr. Warbasse on this case were reasonable and compensable. Nevertheless, the following hours are disallowed.

First, time spent in certain discussions with Mr. Kellner which the Court has determined to have been unnecessary or redundant will not be compensated. The appropriate reductions are .2 hours on March 21, 1994, .3 hours on March 31, 1994, and .2 hours on April 22, 1994.

Secondly, three hours will be deducted from time billed as "research" during the first month of this case and one hour will be deducted for the time devoted specifically to research of the "Civil Rights Act" on October 12, 1993. Counsel's demonstrated unfamiliarity after the trial with the language of the very statute governing the plaintiff's claim and the remedies available to her justifies denying compensation for this research time, which the Court finds was not spent productively.

The time spent by Mr. Warbasse in preparing the plaintiff's proposed jury instructions was excessive. The instructions submitted were largely taken verbatim from a popular text of pattern instructions. "Jury instructions" appears five times in the billing records and it appears that approximately 5.5 hours was spent on this task. Only 2 hours should have been necessary to assemble the submitted instructions. Accordingly, 3.5 hours will be deducted from Mr. Warbasse's total.

Finally, the time Mr. Warbasse spent researching such basic issues as "4th Circuit standards, motion for a direct[ed] verdict, judgment notwithstanding a verdict" and "standards for motions for judgment as a matter of law" will be struck. Mr. Rothman was called into this case for his 40–plus years of litigation experience. Given that experience and Mr. Warbasse's claimed expertise, the approximately 3.5 hours Mr. Warbasse spent researching these fundamental litiga-

tion standards should not have been necessary.

▮▮▮ The Court does not agree with the defendant that hours devoted to research regarding punitive damages issues should be struck. Although the plaintiff ultimately did not prevail at trial in a manner which necessitated that the punitive damages phase of the trial go forward, it was not unreasonable for Mr. Warbasse to have researched and prepared arguments relating to punitive damages in anticipation of a more favorable verdict. The issue was not a frivolous one and the Court notes· that the defendant's motion for summary judgment on this point was denied. Thus, the plaintiff should be compensated for the time her attorneys devoted to punitive damages issues. The Court finds that the number of hours claimed for this work was reasonable.

d. <u>Ms. Murphy-</u>  Hours claimed: 94.3
                         Hours allowed: 65.9

▮▮▮ Ms. Murphy spent approximately 51.7 hours analyzing and charting work schedules for the laundry department employees. The Court finds this total to be excessive and unwarranted by the charts prepared by Ms. Murphy which were presented at trial. Approximately two-thirds of this total, or 35.0 hours will be allowed.

The Court also regards the 33.7 hours Ms. Murphy spent outlining and summarizing various depositions to be excessive and unnecessary in this straightforward case. Once again, approximately one-third of the time, or 11.7 hours, will be disallowed. The rest of the hours billed by Ms. Murphy seem reasonable and justified.

2) *Novelty and Difficulty of the Questions*

▮▮▮ No adjustment is warranted for the novelty or difficulty of the questions presented in this case. This was a simple and very straightforward claim alleging direct evidence of intentional employment discrimination. It revolved around one incident, one statement and one meeting.

3) *Skill Requisite to Perform the Legal Service Properly*

▮▮▮ The Court finds that this was not a case demanding extraordinary skill to per-

form. As explained above, both the claim and the defenses raised by the defendant were straightforward. To the extent that counsel's relative skill level impacted their fees on this case, such variations are already reflected in the market price for counsel's services. Thus, no adjustment is required to account for this factor.

### 4) *Preclusion of Other Employment by the Attorney Due to Acceptance of the Case*

The plaintiff does not argue and presents no evidence that the number of compensable hours should be enhanced to account for her attorneys' lost opportunities. The Court accordingly finds that no adjustment is warranted on the basis of this factor.

### 5) *Customary Fee*

This factor has already been discussed in the Court's determination of reasonable hourly rates in this case and does not impact the appropriate number of hours which should be included in the award of attorney's fees.

### 6) *Attorney's Expectations at the Outset of the Litigation—Whether the Fee is Fixed or Contingent*

█ Neither party has provided the Court with information regarding this factor, and neither party argues that this factor should bear upon the Court's determination of the reasonable number of attorney hours for which the plaintiff should be compensated. Moreover, contingency multipliers may not be allowed in statutory fee cases. *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Accordingly, there is no basis for adjusting the number of hours on this basis.

### 7) *Time Limitations Imposed by the Client or the Circumstances*

No burdensome or extraordinary time constraints were imposed by the litigation in this case.

### 8) *Amount Involved and the Results Obtained*

█ In her motion to recover attorney's fees, the plaintiff voluntarily and substantially reduced the requested fee in light of her failure to prove that she would not have been laid off in the absence of the defendant's discrimination and her consequent failure to recover any damages at trial. The plaintiff did not reduce the number of hours claimed as reasonable, but rather reduced the final lodestar figure by approximately fifty percent. Given the Court's analysis disallowing $11,786.02 of the fees, the plaintiff's ultimate request represents approximately a forty-two percent reduction in the lodestar figure. No additional reduction in the number of hours is warranted. In light of the plaintiff's moderation, this case does not require the Court to determine whether such a downward adjustment is appropriate generally in Title VII cases in which the plaintiff recovers no damages because the defendant proves that the same decision would have been made in the absence of the discriminatory motivation. The plaintiff has requested only $40,000 in attorney's fees and the Court is guided by that request.

█ The defendant is incorrect in asserting that this case is analogous to one in which a civil rights plaintiff technically prevails at trial but recovers only nominal damages. In such a case, the Court would properly deny recovery of attorney's fees altogether. *See Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992) (for a plaintiff who recovers only nominal damages "the only reasonable fee is usually no fee at all."). This argument is based on the language of 42 U.S.C. § 1988 and cases decided pursuant to that statute. As discussed above, section 1988 does not control this dispute. *See supra,* pages 1374–1375.

Moreover, the defendant's position ignores the plain language of 42 U.S.C. § 2000e–5(g)(2)(B). Congress has spoken clearly, and the 1991 Act is quite explicit: the court "may grant ... attorney's fees" in cases in which a defendant is adjudged to have discriminated but proves that it would have made the same decision in the absence of the illegal motivat-

ing factor. 42 U.S.C. § 2000e–5(g)(2)(B). Denying recovery of attorney's fees in this situation on the rationale of "lack of success" would render the statute ineffective and practically meaningless. *Cf.* 2A Norman Singer, *Sutherland on Statutory Construction* § 46.06, at 119–20 (5th ed. 1992) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."); *United States Army Eng'g Ctr. v. Federal Labor Relations Auth.*, 762 F.2d 409, 416–17 (4th Cir.1985); *Uptagrafft v. United States*, 315 F.2d 200, 204 (4th Cir.1963), *cert. denied*, 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 52 (1963). A wholesale denial of fees in this case is completely unjustified and flies in the face of the statute making such fees available.

### 9) *Experience, Reputation and Ability of the Attorneys*

The Court finds that this factor is, as it should be, fully reflected in the market rate for plaintiff's attorneys' services.

### 10) *Undesirability of the Case*

Although the plaintiff alleges that employment discrimination cases are generally considered undesirable, she has presented no evidence that she had difficulty retaining competent counsel to represent her or that there is a dearth of lawyers willing to take such cases in the Baltimore market. For these reasons, this factor will not affect the Court's analysis.

### 11) *Nature and Length of the Professional Relationship with the Client*

Neither party has provided the Court with information regarding this factor, and neither party argues that this factor should bear upon the Court's determination of the reasonable number of attorney hours for which the plaintiff should be compensated. Accordingly, there is no basis for adjusting the number of hours on the basis of the plaintiff's relationship with her attorneys.

### 12) *Awards in Similar Cases*

Given the plaintiff's substantial voluntary reduction in her fee request in this case and absence of reported cases arising under 42 U.S.C. § 2000e–2(m) and 42 U.S.C. § 2000e–5(g)(2)(B), awards in other Title VII cases are not useful guides to the appropriate attorney's fee to be allowed here.

### C. *Totals*

The above analysis of plaintiff's motion for attorney's fees and supporting documentation yields the following totals as appropriate compensation:

| | | | |
|---|---|---|---|
| Rothman: 58.2 hrs. at $200.00/hr. | = | $11,640.00 |
| Kellner: 1.5 hrs. at $210.00/hr. | = | 315.00 |
| Warbasse: 314.1 hrs. at $166.24/hr. | = | 52,215.98 |
| Murphy: 65.9 hrs. at $75.00/hr. | = | 4,942.50 |
| TOTAL FEES (prior to voluntary reduction for limited success) | | $69,113.48 |
| TOTAL FEE—AFTER PLAINTIFF'S VOLUNTARY REDUCTION: | | $40,000.00 |

### D. *Costs*

The plaintiff has requested an award in the amount of $4,509.74 for "costs." These include litigation expenses for items such as duplicating, messenger service, investigation services and filing fees. Plaintiff is entitled to recover all such costs which are reasonable and normally passed on to a client. *Daly v. Hill*, 790 F.2d 1071, 1082–84 (4th Cir.1986) ("attorney's fees and expenses are inseparably intertwined as equally vital components of the costs of litigation"); *Laffey v. Northwest Airlines*, 746 F.2d 4, 30 (D.C.Cir. 1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). The Court finds that the plaintiff's requested costs of $4,500.00 were reasonably incurred in preparing this case and are recoverable from the defendant.

### V. *Effect of Rule 68*

Rule 68 of the Federal Rules of Civil Procedure is a cost-shifting rule designed to encourage settlement of disputes without the burdens of costly litigation. To invoke the rule, the defendant in an action may offer "to allow judgment to be taken against [the defendant]" in a specified amount with costs "then accrued." If the plaintiff does not accept this offer of judgment and "[i]f the judgment finally obtained by the [plaintiff] is not more favorable than the offer, the [plain-

tiff] must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. *See also Marryshow v. Flynn,* 986 F.2d 689, 691 (4th Cir.1993).

■ To effect this provision, the Court must compare the judgment finally obtained at trial with the earlier offer of judgment. In a case involving a fee-shifting statute such as this one, if the offer of judgment exceeds the judgment finally obtained, then the plaintiff must pay her own post-offer costs instead of shifting them to the defendant.[6] If the offer of judgment does not exceed the judgment at trial, then the defendant may have to pay the plaintiff's post-offer costs in accordance with the applicable fee-shifting statute.

Before the Court may make the appropriate comparison between the judgment finally obtained at trial and the earlier offer of judgment, it must determine the value of the judgment finally obtained. In this case, the plaintiff received only a declaratory judgment at trial, but is entitled to recover attorney's fees and costs. *See* 42 U.S.C. § 2000e–5(g)(2)(B). It follows that the judgment finally obtained by the plaintiff for Rule 68 purposes consists of a declaratory judgment and attorney's fees and costs.

■ In making the Rule 68 comparison between the judgment finally obtained and the offer of judgment, the Court must use "like judgments." *Marryshow,* 986 F.2d at 692. Where the offer of judgment included costs and attorney's fees then accrued, the judgment to which it must be compared is the amount of the verdict plus the amount of costs and attorney's fees actually awarded by the court *for the period that preceded the offer. Id.* Thus, the Court must determine pre-offer attorney's fees and costs in this case and compare them to the $5,000 offer of judgment the plaintiff rejected.

### A. *Comparing Pre–Offer Fees and Costs*

■ The Fourth Circuit has explicitly directed that pre-offer attorney's fees and costs must be valued in the same manner "actually adopted by the Court" with respect to overall fees and costs. *Marryshow,* 986 F.2d at 692. In *Marryshow,* the court had reduced the plaintiff's lawyers' hourly fee by $50.00 and then reduced the total fee by a flat ten percent. These reduced figures were then used to determine the fees accrued prior to rejection of the offer of judgment. *Id.* For this reason, the plaintiff's position that her voluntary reduction of the fee request in this case should not apply to the calculation of pre-offer fees is unfounded. Accordingly, the Court will determine pre-offer attorney fees in the same manner as is appropriate for evaluating the overall fee request.

Plaintiff's motion calculates attorney's fees and costs accrued as of the date of the Rule 68 offer of judgment, October 21, 1993, at a total of $6,715.52, including costs of $167.02 and attorney's fees of $6,548.50. This amount should first be reduced to a total of $6,050.56, to account for the amounts disallowed by the Court and then further reduced to $3,509.32, to incorporate the forty-two percent lodestar reduction made by the plaintiff. Quite obviously, the plaintiff's total award of pre-offer fees and costs is less than the $5,000.00 offer of judgment. Accordingly, under Rule 68, "the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68.

### B. *What "Costs" are Shifted*

■ The central issue to be resolved is whether the Rule 68 shifting of post-offer "costs" should include plaintiff's post-offer attorney's fees. The Supreme Court has addressed this issue in a related context in *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Under *Marek,* the lan-

---

**6.** This language in Rule 68 does not imply that the defendant's post-offer costs may be shifted to the plaintiff, but may only prevent the plaintiff from shifting her post-offer costs to the defendant. A civil rights defendant may not be awarded attorney's fees unless the trial court determines that the plaintiff's action was "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). *See also Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam). Such a finding is clearly unwarranted in the present case, in which the jury determined that the defendant had illegally discriminated against the plaintiff on the basis of her pregnancy.

guage of the underlying statute authorizing recovery of attorney's fees will determine whether attorney's fees are part of "costs" for Rule 68 purposes. 473 U.S. at 9, 105 S.Ct. at 3016. The statute at issue in *Marek*, 42 U.S.C. § 1988, clearly made available to a prevailing party " 'attorney's fees *as part of the costs.*' " *Id.* (quoting 42 U.S.C. § 1988) (emphasis added). Based on this clear and unambiguous statutory language, the Supreme Court directed that, in an action for attorney's fees under 42 U.S.C. § 1988, "costs" for Rule 68 purposes should include attorney's fees. *Id.*

■■■ The statutory provision governing recovery of attorney's fees in this case, 42 U.S.C. § 2000e–5(g)(2)(B), is unlike the statute at issue in *Marek*. Instead, it provides that the court may grant "attorney's fees *and costs.*" 42 U.S.C. § 2000e–5(g)(2)(B). In light of the Supreme Court's emphasis on the "plain language" of the underlying statute, the words "attorney's fees and costs" in section 2000e–5(g)(2)(B) assume critical importance and contrast sharply with the statute at issue in *Marek*, in which attorney's fees were specifically described "as part of" costs. In *Marek* the Supreme Court rejected the argument that such subtle variations in phrasing could not be determinative. *Marek*, 473 U.S. at 9, 11, 105 S.Ct. at 3016, 3017. Indeed, Justice Brennan's dissent in *Marek* stresses this point and objects to the importance the majority attributes to "picayune differences in statutory phraseology" such as variations between the words "as" and "and." *Id.* at 15, 23, 105 S.Ct. at 3020, 3024 (Brennan, J., dissenting).

When it enacted 42 U.S.C. § 5(g)(2)(B), Congress was well-aware of the *Marek* decision and the importance which the Supreme Court attributed to the distinction between the phrases "attorney's fees and costs" and "attorney's fees as part of costs." Indeed, the committee reports accompanying the 1991 Act include sharp criticism of the *Marek* opinion, speak of the need to "address" and "overrule" *Marek*, and disapprove of the

Supreme Court's reliance on "small and probably inadvertent differences in phrasing" and "*an accident* in legislative drafting." H.R.Rept. No. 102–40(I), 102nd Cong., 1st Sess., at 82 & n. 77 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 620; H.R.Rept. 102–40(II), 102nd Cong., 1st Sess., at 4, 30 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 696, 724.[7] The legislative history also cites Justice Brennan's dissent in *Marek* and criticizes the court's emphasis on seemingly random variations in the words used to connect the terms "attorney's fees" and "costs" in 119 federal fee-shifting statutes. H.R.Rept. No. 102–40(I), 102nd Cong., 1st Sess., at 82 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 620.

As reflected in this legislative history, the particular language "as part of costs" in 42 U.S.C. § 2000e–5(k) received explicit scrutiny during consideration of the 1991 Act. Significantly different words were used in 42 U.S.C. § 2000e–5(g)(2)(B). Well-recognized canons of statutory construction address this situation. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States*, 464 U.S. 16, 22, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972). *See also United States v. Wooten*, 688 F.2d 941, 950 (4th Cir.1982); *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 843 (D.C.Cir.1984) ("Where explicit language is used in one part of a statute to mean something and different language is later used, there is a strong inference that the two provisions do not mean the same thing."), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984).

The disparity created between the two Title VII provisions, 42 U.S.C. § 2000e–5(g)(2)(B) and 42 U.S.C. § 2000e–5(k), which authorize recovery of plaintiff's attorney's fees is not an illogical one. As part of the 1991 Act, compensatory and punitive dam-

---

**7.** The attempt, reflected in the committee reports quoted above, to reverse the effect of the *Marek* decision on all Title VII plaintiffs by replacing the "as part of costs" language of section 2000e– 5(k) with the "and costs" formulation was not successful and the change is not reflected in the 1991 Act.

ages were made available as additional remedies to successful Title VII plaintiffs. As part of the same Act, these remedies, as well as backpay, were explicitly denied to Title VII plaintiffs who succeed in proving illegal discrimination, but fail to prove that the employer would have made a different decision in the absence of the illegal motivation. In order to assure vigorous enforcement of Title VII, even in cases where an employer may have acted with mixed motives, Congress had to ensure that such plaintiffs would be able to hire competent counsel to pursue their claims. Because no monetary damages are available where section 2000e–5(g)(2)(B) applies, if post-offer attorney's fees were also potentially cut off, few attorneys would be willing to handle mixed-motive cases at all. By deliberately and significantly altering the verbal formulation in section 2000e–5(g)(2)(B) to separate attorney's fees from "costs," Congress has steered a middle course. Plaintiffs will recover no damages, but will be fully compensated for their costs in enforcing Title VII.

In sum, the *Marek* decision, the legislative history of the Civil Rights Act of 1991, familiar principles of statutory construction, and the public interest in vigorous enforcement of Title VII together direct that attorney's fees under 42 U.S.C. § 2000e–5(g)(2)(B) must be considered separate from costs in the operation of Rule 68.

## VI. *Conclusion*

Because the plaintiff in this case rejected a Rule 68 offer of judgment that was higher than the judgment finally obtained at trial, she must bear her own post-offer costs under the Rule. However, the plaintiff's post-offer attorney's fees are not part of these "costs." Plaintiff will recover reasonable pre- and post-offer attorney's fees in the amount of $40,000, as determined by the Court. In addition, she will recover pre-offer costs of $167.02 for a total award of $40,167.02.

## VII. *The Last Word*

On my office wall, there hangs a nineteenth century English print entitled *The Lawsuit*, showing two farmers fighting over a stationary cow—one pulling her by the horns and the other by the tail—while a bewigged barrister happily milks her. This case certainly demonstrates that nothing much has changed. The plaintiff and the defendant are right where they started, while the lawyers' pails hold all the milk.