**Theresa L. SHEPPARD, Plaintiff–Appellee,**

v.

**RIVERVIEW NURSING CENTER, INCORPORATED, Defendant–Appellant.**

**Equal Employment Opportunity Commission, Amicus Curiae.**

**No. 95–1091.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1996.

Decided June 27, 1996.

ARGUED: Frank S. Astroth, Astroth, Serotte, Rockman & Wescott, Baltimore, Maryland, for Appellant. Bradford W. Warbasse, Donald N. Rothman, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Maryland, for Appellee. Karen Marie Moran, Office of General Counsel, Equal Employment Opportunity Commission, Washington, D.C., for Amicus Curiae. ON BRIEF: Jeffrey Rockman, Astroth, Serotte, Rockman & Wescott, Baltimore, Maryland, for Appellant. James R. Neely, Jr., Deputy General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Office of General Counsel, Equal Employment Opportunity Commission, Washington, D.C., for Amicus Curiae.

Before WILKINSON, Chief Judge, and WILLIAMS and MICHAEL, Circuit Judges.

Vacated and remanded by published opinion. Chief Judge WILKINSON wrote the majority opinion, in which Judge WILLIAMS joined. Judge MICHAEL wrote a dissenting opinion.

## OPINION

WILKINSON, Chief Judge:

This appeal requires us to examine the district court's award of attorney's fees in a mixed-motive employment discrimination case. Appellee Theresa L. Sheppard prevailed in a mixed-motive claim against appellant Riverview Nursing Center ("Riverview"), but Riverview established that it would have reached the same decision even absent any discrimination. In such cases, the Civil Rights Act of 1991 provides that a court "may" grant attorney's fees. 42 U.S.C. § 2000e–5(g)(2)(B).

The district court granted Sheppard declaratory relief, costs of $167.02, and attorney's fees in the amount of $40,000. Riverview appeals the fee award. Because the district court failed to appreciate its full discretion under the statute regarding whether to grant attorney's fees, and because we believe that certain concerns of proportionali-

ty should inform that inquiry, we remand for reconsideration of the fee award.

## I.

In September 1993, Sheppard filed a gender discrimination claim against Riverview under Title VII, alleging that she was laid off because of her pregnancy. 42 U.S.C. § 2000e(k). Five weeks after initiation of the suit, Riverview tendered a $5,000 settlement offer, which Sheppard rejected. A jury trial was held beginning on October 31, 1994.

Following trial, the district court instructed the jury in accordance with the standards applicable to mixed-motive claims under the Civil Rights Act of 1991.[1] The jury was asked to determine whether Sheppard's pregnancy was a "motivating factor" in the decision to lay her off. 42 U.S.C. § 2000e–2(m). The court then asked the jury to decide whether, even if discrimination had been a motivating factor, Riverview would have discharged Sheppard in any case for nondiscriminatory reasons. See 42 U.S.C. § 2000e–5(g)(2)(B).

The jury answered both questions in the affirmative, determining that discrimination had motivated Riverview's decision, but that Sheppard would have been laid off for legitimate reasons. Before the Civil Rights Act of 1991, such a finding would have insulated Riverview from liability. See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). After the Act, however, a plaintiff is eligible for limited recovery in such situations—declaratory relief, certain types of injunctive relief, and attorney's fees and costs—as is provided for in 42 U.S.C. § 2000e–5(g)(2)(B):

On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

Pursuant to these provisions, the district court awarded Sheppard a declaratory judgment, but denied injunctive relief because it found insufficient danger of a continuing violation.

Sheppard then filed a motion requesting attorney's fees of $40,000 and costs of $4,509.74.[2] Riverview challenged the fee request, arguing that under Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), a civil rights plaintiff who prevails as a technical matter but who receives only nominal damages should not recover any attorney's fees. The district court disagreed, reasoning that Farrar was based on 42 U.S.C. § 1988, whereas Sheppard's request arose from 42 U.S.C. § 2000e–5(g)(2)(B). The latter provision already limits the types of available relief, the court concluded. As a result, hinging the recovery of attorney's fees on the degree to which plaintiffs secure relief would, in the court's view, effectively nullify the availability of fees.

Riverview also challenged the fee award under Rule 68 of the Federal Rules of Civil Procedure, which requires a plaintiff who rejects a settlement offer to pay her own post-offer "costs" if the offer turns out to be more favorable than her eventual recovery. Riverview asserted that its settlement offer of $5,000 exceeded Sheppard's recovery, and that the $40,000 attorney's fee award thus should be reduced by the amount of fees attributable to post-offer services. The district court disagreed, ruling that under the language of 42 U.S.C. § 2000e–5(g)(2)(B), attorney's fees are not part of the post-offer

---

1. Whether this case was properly submitted to the jury as a mixed-motive case is not at issue in this appeal. See Fuller v. Phipps, 67 F.3d 1137 (4th Cir.1995).

2. Sheppard actually claimed to have incurred attorney's fees in the amount of $80,899.50, but she voluntarily reduced her fee request to $40,000 because of her failure to prove that she would not have been laid off absent any discrimination.

"costs" subject to Rule 68. *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). The court did, however, reduce Sheppard's recovery of costs from $4,509.74 to $167.02 pursuant to Rule 68. Riverview appeals the $40,000 fee award.

## II.

The district court apparently believed that an award of attorney's fees was mandatory in mixed-motive cases, and that *Farrar v. Hobby*'s concerns with the relationship between the fees and the degree of success achieved in the underlying litigation had no application here. To the contrary, we believe that the award of fees is discretionary under 42 U.S.C. § 2000e–5(g)(2)(B), and that concerns of proportionality do play a part in the analysis.

### A.

The statute under which the attorney's fees were awarded in this case, 42 U.S.C. § 2000e–5(g)(2)(B), provides that a court "may" grant attorney's fees. The word "may" means just what it says: that a court has discretion to award (or not to award) attorney's fees. The terms of § 2000e–5(g)(2)(B) make evident that the granting of fees is discretionary rather than mandatory—the provision later states that a court "shall" not award damages or require reinstatement. Plainly, if Congress had wished to require recovery of attorney's fees, it would have provided that courts "shall" grant fees instead of that they "may" do so. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983); *Persinger v. Islamic Republic of Iran,* 729 F.2d 835, 843 (D.C.Cir.) ("When Congress uses explicit language in one part of a statute . . . and then uses different language in another part of the same statute, a strong inference arises that the two provisions do not mean the same thing."), *cert. denied,* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984).

■ Here, the district court appeared to misperceive the discretionary nature of its inquiry, assuming instead that an award of attorney's fees was essentially mandatory. Its analysis of Sheppard's motion for attorney's fees dealt primarily with whether the amount of fees requested was reasonable, not with whether fees should be granted in the first instance. In the court's view, a "wholesale denial of fees . . . is completely unjustified and flies in the face of the statute making such fees available." *Sheppard v. Riverview Nursing Centre,* 870 F.Supp. 1369, 1381 (D.Md.1994). But a denial of fees only "flies in the face" of a statute that *requires* courts to award fees, not a statute, like § 2000e–5(g)(2)(B), that leaves the determination to a court's discretion. By its nature, the latter sort of provision contemplates that courts may decide not to grant fees in particular cases.

The decision whether to award fees under § 2000e–5(g)(2)(B) is thus plainly a discretionary one. We turn now to an examination of the considerations that should inform a court's exercise of that discretion.

### B.

In *Farrar v. Hobby,* 506 U.S. at 103, 113 S.Ct. at 569, the Supreme Court discussed the factors that should guide a court's determination of whether to award attorney's fees. In that case, Dale Farrar sought $17 million in damages in a § 1983 action, but ultimately received only one dollar as a nominal award. The district court nevertheless granted him $280,000 in attorney's fees under 42 U.S.C. § 1988, which states that a court "may" in its discretion award to a "prevailing party" in a civil rights action a "reasonable attorney's fee." The Supreme Court held that Farrar qualified as a "prevailing party" so as to be eligible for attorney's fees, but that considerations of proportionality should guide the decision whether to award fees. Given the minimal success achieved by Farrar, the Court found, the appropriate fee recovery in the circumstances was "no fee at all." *Farrar,* 506 U.S. at 115, 113 S.Ct. at 575.

■ The same logic should bar recovery of attorney's fees here, Riverview asserts, because Sheppard only obtained declaratory relief. The district court rejected this argument on the ground that *Farrar* construed 42 U.S.C. § 1988, whereas in this case the

fee award arises under 42 U.S.C. § 2000e–5(g)(2)(B).[3] In our view, however, any difference between the two provisions does not justify disregarding *Farrar*. It is true that *Farrar* examined whether a plaintiff who receives only nominal damages qualifies as a "prevailing party" under § 1988, and that § 2000e–5(g)(2)(B) contains no prevailing party requirement. But the Court's discussion of the prevailing party threshold was only one of the decision's two principal elements, dealing solely with whether a particular plaintiff was *eligible* to receive fees. *Farrar* also addressed a second issue, one that lies at the heart of this case: Assuming that a given plaintiff is eligible to receive attorney's fees, what factors should inform a district court's exercise of its statutory discretion in deciding whether to award fees? With respect to that question, sections 1988 and 2000e–5(g)(2)(B) require similar inquiries.

■ When assessing whether to grant fees, *Farrar* requires that courts consider the relationship between the fees and the degree of the plaintiff's success. *Farrar*, 506 U.S. at 114–16, 113 S.Ct. at 574–76. The district court seemed to be of the view that, because § 2000e–5(g)(2)(B) already limits the scope of recovery, *Farrar*'s concern with proportionality makes little sense in this context: "Denying recovery of attorney's fees in this situation on the rationale of 'lack of success' would render the statute ineffective and practically meaningless." *Sheppard*, 870 F.Supp. at 1381. Section 2000e–5(g)(2)(B) does prohibit any recovery of damages, and so we agree with the trial court that simply comparing the extent of damage recovery with the attorney's fees would amount to an empty exercise. Nevertheless, if denial of fees would invariably render the statute "ineffective" and "practically meaningless," Congress would have written a mandatory provision requiring that attorney's fees be awarded in every case. That it did not do so suggests that Congress was wary of enacting legislation whose benefit inures primarily to lawyers in the form of a substantial fee recovery, even if relief to the plaintiff is otherwise trivial and the lawsuit promotes few public goals.

Factoring proportionality concerns into the analysis helps guard against this result. In appropriate cases, for instance, courts should consider the reasons why injunctive relief was or was not granted, or the extent and nature of any declaratory relief. Moreover, *Farrar*'s concern was not only with whether the extent of recovery accords with the amount of attorney's fees. The decision suggested a more general proportionality consideration as well: whether the public purposes served by resolving the dispute justifies the recovery of fees. *See Farrar*, 506 U.S. at 121–22, 113 S.Ct. at 578. (O'Connor, J., concurring) (a plaintiff's "success might be considered material if it also accomplished some public goal other than occupying the time and energy of counsel, court, and client").

Such an analysis should apply here. By definition, an illicit factor will have played some role in cases subject to § 2000e–5(g)(2)(B). *See* 42 U.S.C. § 2000e–2(m). But within that category of cases, there are large differences. Some mixed-motive cases will evidence a widespread or intolerable animus on the part of a defendant; others will illustrate primarily the plaintiff's unacceptable conduct which, by definition, will have justified the action taken by the defendant. The statute allows district courts to distinguish among cases that are in reality quite different.

Factoring *Farrar*'s principles into the analysis under § 2000e–5(g)(2)(B) will not suppress the incentive to file Title VII actions. A host of contingencies affects the course of every civil rights lawsuit. There is

---

**3.** We reject Riverview's suggestion that either 42 U.S.C. § 1988 or 42 U.S.C. § 2000e–5(k) governs the analysis of attorney's fees in this case. Both provisions generally allow for attorney's fees for plaintiffs who prevail in civil rights lawsuits, the latter dealing with Title VII and the former with a broader range of actions. As the district court correctly found, 42 U.S.C. § 2000e–5(g)(2)(B) controls the award of attorney's fees here, be-

cause that provision is a more specific one applying uniquely in the context of mixed-motive cases. *See HCSC–Laundry v. United States*, 450 U.S. 1, 6, 101 S.Ct. 836, 839, 67 L.Ed.2d 1 (1981) (per curiam) ("[I]t is a basic principle of statutory construction that a specific statute ... controls over a general provision ... particularly when the two are interrelated and closely positioned.").

always the risk that a plaintiff will not prevail on the merits, yet this is not a disincentive to the initiation of Title VII actions. Moreover, because a case generally does not become a mixed-motive or pretext case until after the evidence is developed, *see Fuller v. Phipps,* 67 F.3d 1137, 1142–43 (4th Cir.1995), plaintiffs ordinarily will not know whether their claim implicates § 2000e–5(g)(2)(B) at the time of filing suit. And in cases governed by § 2000e–5(g)(2)(B), an award of attorney's fees will often be appropriate for the reasons we have already expressed.

## III.

 Riverview contends that under Fed. R.Civ.P. 68, Sheppard should be forced to bear the cost of attorney's fees that accrued after the date of the $5,000 offer of judgment. We disagree that Rule 68 applies of its own force to the award of attorney's fees in § 2000e–5(g)(2)(B) cases. We do believe, however, that a court may consider a plaintiff's rejection of a settlement offer as one of several factors generally informing its discretionary inquiry under § 2000e–5(g)(2)(B).

Rule 68 states that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the *costs* incurred after the making of the offer." [4] Fed.R.Civ.P. 68 (emphasis added). Whether attorney's fees fall within the category of "costs" subject to Rule 68's cost-shifting requirement depends upon the precise language of the statute providing for the fee award. *Marek v. Chesny,* 473 U.S. 1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985). *Marek* involved 42 U.S.C. § 1988, which allows courts to award "attorney's fees *as part of the costs.*" 42 U.S.C. § 1988(b) (emphasis added). The Supreme Court held that the language of § 1988 plainly contemplates that "costs" include attorney's fees, and so fees recovered pursuant to that statute are sub-

ject to Rule 68's cost-shifting requirement. *Marek,* 473 U.S. at 9, 105 S.Ct. at 3016.

The award of attorney's fees in this case, however, was pursuant to § 2000e–5(g)(2)(B), which provides for the recovery of "attorney's fees *and costs.*" 42 U.S.C. § 2000e–5(g)(2)(B)(i) (emphasis added). In expressly distinguishing attorney's fees from "costs," Congress was aware that it was deviating from the language in § 1988, and that under *Marek,* the Rule 68 implications depend upon the precise wording of the fee-enabling statute. *See* H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 82 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 620. This explicit congressional recognition, coupled with *Marek*'s emphasis on the exact language of the particular attorney's fee provision, makes clear that fees granted under § 2000e–5(g)(2)(B) are not part of "costs" subject to Rule 68.

That Rule 68 may not require plaintiffs to bear their own post-offer attorney's fees in § 2000e–5(g)(2)(B) cases does not, however, prohibit courts from considering a plaintiff's rejection of a settlement offer as one factor affecting its decision whether to award fees or in what amount. In fact, such a consideration seems a sensible one in light of *Farrar*'s concerns with the degree of success achieved by the plaintiff and the public purposes served by the litigation. *See Marek,* 473 U.S. at 11, 105 S.Ct. at 3017–18. After all, refusing a reasonable offer of settlement promotes few public interests when the plaintiff ultimately receives a less favorable recovery after trial. Consequently, courts may consider a plaintiff's refusal of a settlement offer as one of several proportionality factors guiding their exercise of discretion under § 2000e–5(g)(2)(B), and the district court may do so here on remand.

## IV.

Our good colleague on this panel has written a fine dissenting opinion. We shall explain briefly why we disagree with it.

---

4. In this case, "the judgment finally obtained" by Sheppard was "not more favorable than" the $5,000 offer. Fed.R.Civ.P. 68. The $5,000 offer included damages as well as fees and costs then accrued. The relevant comparison is thus with the damages actually awarded plus that portion of the fees and costs actually awarded that is attributable to the period preceding the offer. *See Marryshow v. Flynn,* 986 F.2d 689, 692 (4th Cir.1993). Here, Sheppard received no damages, and the portion of the fees and costs awarded relating to the period preceding the offer was calculated by the district court to be $3,509.32. Because this figure is less than the $5,000 offer, Rule 68 would require that Sheppard pay for her own post-offer "costs." The question we address here is whether attorney's fees are part of these "costs."

The dissent contends essentially that district courts must award a lodestar attorney's fee in all cases subject to § 2000e–5(g)(2)(b), "even when 'special circumstances' exist that would render a grant of fees 'unjust.'" *Infra* at 1342. This conclusion cannot be squared with the statutory language. Congress, as we have discussed, wrote that a district court "may" grant attorney's fees. It did not write that fees "shall" or "must" be awarded in every mixed-motive case, and we are not at liberty to place in its mouth words which are not there. Any difference in language between § 1988 and § 2000e–5(g)(2)(B) is outweighed by their matching dispositive verb, "may," which signifies that district courts retain discretion under both provisions. *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, ——, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 415–16, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978).

The dissent suggests, however, that "may" and "shall" can be synonymous. *Infra* at n. 2. Even young children would say otherwise. They learn early on that "may" is a wonderfully permissive word. "Shall," by contrast, is more sternly mandatory. And whatever the merits of believing "may" means "shall," they do not apply when Congress has employed the two different verbs in neighboring statutory passages. *See Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947) ("when the same Rule uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory").[5]

Alternatively, the dissent maintains, "may" only operates to show that district courts are under no obligation to grant injunctive relief under the statute. This suggestion, too, is disproved by the statutory language. The word "may" qualifies the award of all forms of relief, not just injunctive relief: According to § 2000e–5(g)(2)(B), a district court "may grant declaratory relief, injunctive relief ... and attorney's fees and costs." So if "may"

gives district courts discretion on whether to award an injunctive remedy, it must do the same with regard to attorney's fees as well.

The dissent's spin on the statute, moreover, entails an anomalous outcome: It places mixed-motive plaintiffs in a more favorable position than plaintiffs for whom discrimination is the sole cause of an adverse employment decision. In cases falling under § 2000e–5(g)(2)(B), the employer by definition "would have taken the same action in the absence of [any] impermissible motivating factor"—here, the jury made that very finding on its verdict form. Suppose that a plaintiff was discharged for embezzling funds, divulging company secrets, or acting abusively toward his or her co-workers, but that an illicit factor also played some role in the dismissal. Such a plaintiff would automatically recover attorney's fees under the dissent's view of § 2000e–5(g)(2)(B). A plaintiff who engaged in no misconduct, by contrast, would find any recovery of fees subject to *Farrar's* proportionality standards. This could not have been Congress' intention.

The dissent confuses eligibility for attorney's fees with an entitlement to a lodestar award. The premise seemingly underlying the dissent's interpretation of the statute is that, because mixed-motive plaintiffs are barred from receiving an award of money damages, they are entitled on that account to a grant of attorney's fees. There is no indication in the statute, however, that Congress sought to take money from the pockets of plaintiffs solely to deposit it in the pockets of attorneys. Of course, § 2000e–5(g)(2)(B)'s express prohibition against any award of damages does affect the proportionality inquiry—we agree with the dissent that a plaintiff's "lack of success in obtaining a money judgment cannot ... preclude an award of attorney's fees," *infra* at 1344, and we state so above. Just as plaintiffs should often receive attorney's fees when they prevail in non-mixed-motive cases, *see Hensley v. Eck-*

---

5. Contrary to the dissent's implication, the Supreme Court did not suggest otherwise in *Gutierrez de Martinez v. Lamagno,* —— U.S. ——, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). That opinion states that "'shall' generally means 'must,'"

but that "legal writers sometimes use, or *misuse* 'shall' to mean 'should,' 'will,' or even 'may.'" *Id.* at —— n. 9, 115 S.Ct. at 2235 n. 9 (emphasis added).

*erhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), they will often recover fees when they prevail in mixed-motive cases as well, despite the unavailability of damages.

This does not mean, however, that § 2000e–5(g)(2)(B) completely strips district courts of their traditional discretion to tailor the fee award to the plaintiff's degree of success. *See Hensley,* 461 U.S. at 434–37, 103 S.Ct. at 1940–42. So while we heartily agree with the principle that the "workplace is no place for discrimination," *infra* at 1346, we simply believe that district courts may consider the circumstances of each case in fashioning any award of attorney's fees—indeed, one of the relevant factors is the extent to which a plaintiff succeeds in showing that an employer's discrimination, and not the employee's own misconduct, drove the employment decision. In short, district courts retain discretion in awarding attorney's fees under § 2000e–5(g)(2)(B), just as they have discretion under other civil rights fee statutes, but with *Farrar*'s proportionality considerations modified to fit the parameters of § 2000e–5(g)(2)(B) along the lines we have outlined.

### V.

*Farrar* was designed to prevent a situation in which a client receives a pyrrhic victory and the lawyers take a pot of gold.[6] The district court in this case awarded $40,000 in attorney's fees under the impression that it lacked the discretion customarily accorded trial courts in the area of attorney's fees. For the foregoing reasons, we vacate the award and remand the case, so that the district court may reconsider it, describing its application of the factors set forth herein.

*VACATED AND REMANDED*

MICHAEL, Circuit Judge, dissenting:

I respectfully dissent because the majority opinion completely frustrates the intent of Congress. Prior to the passage of the Civil Rights Act of 1991, an employer was immune from liability under Title VII in "mixed-motive" cases. That is, in cases where the plaintiff showed that an impermissible factor such as race or gender played a motivating role in an employment decision, the employer could still avoid liability by showing that it would have made the same employment decision in the absence of the impermissible factor. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989). Accordingly, a plaintiff in a mixed-motive case was the loser and not eligible for an award of attorney's fees.

However, with the passage of the Civil Rights Act of 1991, Congress decided that a plaintiff in a mixed-motive case can in fact establish a violation of Title VII. In particular, 42 U.S.C. § 2000e–2(m), section 703(m) of the Civil Rights Act of 1991, provides:

> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

According to Congress, therefore, a plaintiff who proves a mixed-motive employment decision succeeds in winning her case.

Yet, with her "win," a plaintiff is only eligible for limited relief:

> On a claim in which an individual proves a violation under section 2000e–2(m) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>
> (i) *may grant* declaratory relief, injunctive relief (except as provided in clause (ii)), and *attorney's fees and costs demonstrated to be directly attributable only to the pur-*

---

**6.** The district court echoed this very concern in quite humorous fashion, stating at the conclusion of its opinion:

> On my office wall, there hangs a nineteenth century English print entitled *The Lawsuit,* showing two farmers fighting over a stationary cow—one pulling her by the horns and the other by the tail—while a bewigged barrister happily milks her. This case certainly demonstrates that nothing much has changed. The plaintiff and the defendant are right where they started, while the lawyers' pails hold all the milk.

*Sheppard,* 870 F.Supp. at 1384.

*suit of a claim under section 2000e–2(m);* and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e–5(g)(2)(B), section 706(g) of the Civil Rights Act of 1991 (emphasis added). Thus, again according to Congress, a court in a mixed-motive case "may grant" the plaintiff an award of "attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m)." Congress made equally clear, however, that a plaintiff cannot recover money damages, and she may be granted injunctive relief only to the extent that such relief does not conflict with subsection 5(g)(2)(B)(ii).

In this appeal, two questions are raised by a plain reading of section 2000e–5(g)(2)(B). First, under what circumstances "may" a court "grant" an award of attorney's fees when the plaintiff has successfully established a violation of section 2000e–2(m)? And second, if an award of attorney's fees is granted, what amount should be awarded?

In answering these questions the majority simply misreads both section 2000e–5(g)(2)(B) and the Supreme Court's decision in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In particular, the majority holds that the proportionality considerations that informed the *Farrar* Court's decision to deny fees under 42 U.S.C. § 1988 should also apply in determining whether to grant or deny fees under section 2000e–5(g)(2)(B). *Ante* at 1335–1337. That conclusion effectively writes section 2000e–5(g)(2)(B) out of existence: after today, to recover attorney's fees a plaintiff must show more than a violation of section 2000e–2(m) and achieve some level of success beyond what Congress intended. The majority reaches this result even though *Farrar* involves a statutory provision different than section 2000e–5(g)(2)(B), and even though a plaintiff in a mixed-motive case is expressly precluded from recovering money damages and her right to injunctive relief is severely limited. The majority's interpretation of section 2000e–5(g)(2)(B) is not supportable as a matter of statutory construction. Nor is it reasonable.

## I.

The Supreme Court's decision in *Farrar v. Hobby* does not have any bearing on whether and to what extent a court should grant an award of attorney's fees under section 2000e–5(g)(2)(B). And, even if *Farrar* were applicable in mixed-motive cases, that decision would support the conclusion that an award of attorney's fees should be granted under almost all circumstances in which a plaintiff establishes a violation of section 2000e–2(m).

## A.

In *Farrar* the Court was asked to decide whether a plaintiff who recovers only nominal damages may still be deemed a prevailing party eligible for an award of attorney's fees. The statute at issue there was the Civil Rights Attorney's Fees Awards Act of 1976, as amended, 42 U.S.C. § 1988, which provides that:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d, et seq.], or section 13981 of this title, *the court, in its discretion, may allow the prevailing party,* other than the United States, *a reasonable attorney's fee as part of the costs.*

(Emphasis added.) After determining that a party who "wins" her case yet recovers only nominal damages is in fact a "prevailing party" under section 1988, *Farrar,* 506 U.S. at 112–14, 113 S.Ct. at 573–74, the Court nonetheless held that under such circumstances "the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S.Ct. at 575.

In this case, however, we are asked to interpret section 2000e–5(g)(2)(B), not section 1988. On their faces these sections are quite different. Section 1988 makes clear that "the court, *in its discretion,* may allow the prevailing party ... *reasonable* attorney's fees as part of costs." (Emphasis added.)

Likewise, section 2000e–5(k), the general provision under which a Title VII plaintiff recovers attorney's fees, provides that "the court, *in its discretion,* may allow the prevailing party ... *reasonable* attorney's fees ... as part of costs." (Emphasis added.)[1] By contrast, section 2000e–5(g)(2)(B) does not provide for the court to award "reasonable" attorney's fees "in its discretion." Of course, section 2000e–5(g)(2)(B) contains the word "may," and we usually assume that Congress's use of "may" instead of "shall" indicates that the court has discretion to act. But when, as here, "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

Thus, when the statutory language of section 2000e–5(g)(2)(B) is contrasted with the language of section 1988 and section 2000e–5(k)—that is, when one appreciates that Congress omitted both the "in its discretion" and "reasonable" language from section 2000e–5(g)(2)(B)—it is clear that Congress intended that a court have less discretion to deny attorney's fees under section 2000e–5(g)(2)(B) than it possesses under section 1988 and section 2000e–5(k). Although section 1988 is not part of Title VII, both section 1988 and section 2000e–5(g)(2)(B) involve the same subject: the grant of attorney's fees. Also, section 2000e–5(k) is in Title VII, and in fact, it is part of the same statutory section as section 2000e–5(g)(2)(B) (*i.e.,* section 2000e–5), following just four paragraphs after section 2000e–5(g)(2)(B). It is therefore evident that Congress intended to leave out the "in its discretion" and "reasonable" language from section 2000e–5(g)(2)(B). *See ante* at 1335 ("When Congress uses explicit language in one part of the same statute ... and then uses different language in another part of the

same statute, a strong inference arises that the two provisions do not mean the same thing.") (quoting *Persinger v. Islamic Republic of Iran,* 729 F.2d 835, 843 (D.C.Cir.), *cert. denied* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984)). To read (as does the majority) section 2000e–5(g)(2)(B) to require the same analysis as the Court employed in *Farrar* means either that the "in its discretion" and "reasonable" language of section 1988 and section 2000e–5(k) is superfluous or that we can infer from the statutory silence of section 2000e–5(g)(2)(B) a level of discretion that does not expressly exist. As a matter of basic statutory construction, I can not accept either of these propositions. Nor did Congress.

Moreover, Congress's use of the phrase "shall not" in subsection (ii) of section 2000e–5(g)(2)(B) does not, as the majority urges, show that Congress, in using the word "may" in subsection (i), intended a court to have the same discretion under section 2000e–5(g)(2)(B) as it does under section 1988 and section 2000e–5(k). *See ante* at 1335. For one thing, if Congress had used the phrase "may not" in subsection (ii), the court's discretion under that subsection would be just as limited (*i.e.,* none at all). Also, because in most instances the statutory language of section 2000e–5(g)(2)(B) precludes a grant of injunctive relief in a mixed-motive case, Congress's use of the word "may" likely reflects the fact that a court will be unable to grant injunctive relief, not that a court has the same discretion to grant (or deny) attorney's fees under section 2000e–5(g)(2)(B) as it does under section 1988 and section 2000e–5(k). In this case, for example, Sheppard did not qualify for the limited form of injunctive relief authorized under section 2000e–5(g)(2)(B) because, as the district court recognized, there is "no danger of a continuing violation of the plaintiff's right to be free from illegal discrimination." *Sheppard v.*

---

1. The majority makes no claim that either section 1988 or section 2000e–5(k) controls here and in fact rejects the proposition altogether, *ante* at 1336 n. 3, though the appellant's principal argument on appeal was that section 1988 controlled or, in the alternative, that section 2000e–5(k) controlled. *See* Appellant's Br. at 12–13 ("Riverview contests the District Court's

finding that § 2000e–5(g)(2)(B) governs with respect to determining an award of attorney's fees in this case.... [T]he applicable statute to be considered with her request for attorney's fees is the Civil Rights Attorney's Fees Award Act of 1976, § 1988.... Alternatively, the appropriate attorney's fees provision ... [is] in Title VII ... at § 2000e–5(k).... ").

*Riverview Nursing Centre, Inc.*, 870 F.Supp. 1369, 1374 (D.Md.1994).[2]

In light of the (pre-*Farrar*) case law existing at the time Congress enacted section 2000e–5(g)(2)(B), Congress's probable intent was that a court should grant attorney's fees under almost all circumstances in which a plaintiff establishes a violation of section 2000e–2(m). When Congress enacted section 2000e–5(g)(2)(B) in 1991, the Supreme Court had recognized on several occasions that:

> [S]ection [1988] states that the court *"in its discretion"* may allow a fee, but that discretion is not without limit: the prevailing party *"should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."*

*Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 1, 109 S.Ct. 939, 942 n. 1, 103 L.Ed.2d 67 (1989) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983)) (emphasis added). Therefore, the conclusion to draw from Congress's decision not to include the "in its discretion" and "reasonable" language in section 2000e–5(g)(2)(B) is that a court should grant attorney's fees under section 2000e–5(g)(2)(B) even when "special circumstances" exist that would render a grant of fees "unjust" under section 1988 (or section 2000e–5(k)).

The particular "special circumstance" that Congress evidently intended to exclude from a court's consideration when it enacted section 2000e–5(g)(2)(B) is the situation where a plaintiff recovers no money damages. Justice O'Connor's concurring opinion in *Farrar* confirms this because she makes clear that under *Hensley v. Eckerhart* the award of nominal damages is a "special circumstance" making "unjust" the award of any "reasonable" attorney's fee under section 1988:

> It goes without saying that, if the *de minimis* exclusion were to prevent the plaintiff from obtaining prevailing party status, fees would be denied. [*Farrar*, 506 U.S.] at 116 [113 S.Ct. at 575–76]. And if the *de minimis* victory exclusion is in fact part of the reasonableness inquiry, see [*id.*] at 114 [113 S.Ct. at 574], summary denial of fees is still appropriate. We have explained that even the prevailing plaintiff may be denied fees if " 'special circumstances would render [the] award unjust.' " *Hensley v. Eckerhart*, 461 U.S. 424, 429 [103 S.Ct. 1933, 1937, 76 L.Ed.2d 40] (1983) (citations omitted). While that exception to fee awards has often been articulated separately from the reasonableness inquiry, sometimes it is bound up with reasonableness: It serves as a short-hand way of saying that, even before calculating a lodestar or wading through all the reasonableness factors, it is clear that the reasonable fee is no fee at all. After all, where *the only* reasonable fee is no fee, an award of fees would be unjust; conversely, where a fee award would be unjust, the reasonable fee is no fee at all.

*Farrar*, 506 U.S. at 118, 113 S.Ct. at 576–77 (O'Connor, J., concurring) (emphasis in original). Under section 2000e–5(g)(2)(B), however, there is no "reasonableness inquiry" to make because the word "reasonable" is not found. There are, therefore, no "proportionality" considerations to take into account when deciding whether to grant attorney's

---

2. Although I do not rely on it, there is certainly an argument that Congress intended the word "may" to mean "shall" in the context of an award of attorney's fees under section 2000e–5(g)(2)(B). As the Supreme Court recognizes, Congress does occasionally use the words "shall" and "may" interchangeably. *See Gutierrez de Martinez v. Lamagno*, —— U.S. ——, ——, n. 9, 115 S.Ct. 2227, 2235 n. 9, 132 L.Ed.2d 375 (1995) (" 'shall' and " 'may' " are 'frequently treated as synonyms' and their meaning depends on context") (quoting D. Mellinkoff, *Mellinkoff's Dictionary of American Usage* 402–03 (1992)); *id.* ("[C]ourts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* may mean *may* in some contexts, and vice versa.") (quoting B. Garner, *Dictionary of Modern Legal Usage* (2d ed. 1995)). *See also id.*, —— U.S. at ——, 115 S.Ct. at 2239 (Souter, J., dissenting) ("Providing authority in one circumstance but not another implies an absence of authority in the statute's silence."). Thus, while the majority says that young children consider "may" "a wonderfully permissive word," *ante* at 1337–38, "[e]ven young children" (to borrow the majority's phrase) recognize the importance of context. Surely, a misbehaving young child understands the meaning of the parental instruction "You may go to your room now!".

fees.[3] Justice O'Connor also makes clear that if Congress had declared a contrary intent in section 1988, a court would still be required to grant a fee when only nominal damages are awarded:

> Of course, no matter how much sense this approach makes, it would be wholly inappropriate to adopt if Congress had declared a contrary intent. When construing a statute, this Court is bound by the choices Congress has made, not the choices we might wish it had made.... Section 1988 expressly grants district courts discretion to withhold attorney's fees from prevailing parties in appropriate circumstances: It states that a court "may" award fees "in its discretion." 42 U.S.C. § 1988.... [T]he occurrence of a purely technical or *de minimis* victory is such a circumstance. Chimerical accomplishments are simply not the kind of legal change that Congress sought to promote in the fee statute.

*Farrar*, 506 U.S. at 118–19, 113 S.Ct. at 577 (O'Connor, J., concurring) (citations omitted).

Of course, in the light of the statutory language contained in section 2000e–5(g)(2)(B), no matter how much sense the majority's approach might make here, it is wholly inappropriate because Congress has declared a contrary intent. The exclusion of the "in its discretion" and "reasonable" language shows that a court should still grant attorney's fees when a successful mixed-motive plaintiff recovers no money damages or obtains no injunctive relief. This only makes sense because section 2000e–5(g)(2)(B) expressly precludes a plaintiff from recovering

money damages and severely limits a plaintiff's right to injunctive relief. Indeed, in the context of mixed-motive cases, Congress has decided that even though a plaintiff's remedies are severely limited, there is nothing "technical," "*de minimis*," or "chimerical" when a plaintiff establishes liability. This is the case because there is nothing "technical," "*de minimis*," or "chimerical" about exposing discrimination in the workplace.

In sum, if Congress had meant for a plaintiff's proportional degree of success, over and above establishing a violation of section 2000e–2(m), to dictate whether a grant of attorney's fees is proper, Congress would surely have made this plain, instead of simply authorizing a grant of attorney's fees whenever a violation of section 2000e–2(m) is established. It is therefore plain that section 2000e–5(g)(2)(B) eliminates from a court's discretion the issue of proportionality (*i.e.*, the "reasonableness inquiry"), which lies at the heart of *Farrar*. To hold otherwise (as the majority does) renders meaningless Congress's decision to allow for attorney's fees in mixed-motive cases because remedies are limited and monetary damages precluded.[4]

I turn then to the first of the two questions raised by a plain reading of section 2000e–5(g)(2)(B): under what circumstances "may" a court "grant" an award of attorney's fees when the plaintiff has successfully established a violation of section 2000e–2(m). That question has a clear answer. Once a plaintiff proves a violation under section § 2000e–2(m), Congress intended that a court should grant attorney's fees under almost all circumstances, and without regard

---

**3.** I am not suggesting that Congress authorized in section 2000e–5(g)(2)(B) the grant of an unreasonable attorney's fee. Rather, Congress has itself determined that a reasonable fee is that "directly attributable only to the pursuit of a claim under section 2000e–2(m)." *See infra* Part II. And, despite what the majority believes, I am also not suggesting that district courts must award a lodestar attorney's fee in all cases subject to section 2000e–5(g)(2)(B). *See ante* at 1337. Nor am I confusing "eligibility for attorney's fees with an entitlement to a lodestar award." *Id.* at 1338. Although the absence of the word "reasonable" in the statutory language of section 2000e–5(g)(2)(B) compels the conclusion that the proportionality considerations of *Farrar* do not apply in a mixed-motive case,

"special circumstances" might still exist rendering any award of fees unjust. *See infra* at 1344 n. 5. That analysis does not confuse eligibility with entitlement. It merely recognizes that the particular "reasonableness inquiry" that Justice O'Connor outlines in *Farrar* does not have a role under section 2000e–5(g)(2)(B) in answering the questions of whether an award of fees may be granted and, if so, in what amount.

**4.** The majority's holding is especially ironic because the majority makes clear that "we are not at liberty to place in [Congress's] mouth words which are not there." *See ante* at 1337. Yet, by reading the "in its discretion" and "reasonable" language into section 2000e–5(g)(2)(B), it is the majority that has done just that.

to a plaintiff's proportional degree of success. There could be no other purpose for Congress providing for the award of "reasonable" attorney's fees in the court's "discretion" under section 1988 and section 2000e–5(k), but not including the "in its discretion" and "reasonable" language in section 2000e–5(g)(2)(B). In light of the express statutory language of section 2000e–5(g)(2)(B), *Farrar v. Hobby* does not block what Congress intended to achieve by awarding attorney's fees to those who expose discrimination by proving mixed-motive employment decisions.[5]

### B.

Suppose I am wrong to conclude that the Supreme Court's decision in *Farrar v. Hobby* has nothing to do with a court's consideration of whether to grant attorney's fees under section 2000e–5(g)(2)(B). Even still, under a proper application of *Farrar* a court should grant attorney's fees whenever a plaintiff has successfully established a violation of section 2000e–2(m) and obtained either declaratory or some limited form of injunctive relief. Thus, under *Farrar* the answer to the first question posed above remains the same because it will only be under the most unusual circumstances that a plaintiff will not be awarded either of these remedies.

To be eligible to recover attorney's fees under section 1988 (the statute at issue in *Farrar*) a party must be the "prevailing party." In *Farrar* the Supreme Court first held that a plaintiff who recovers only nominal damages is in fact a prevailing party for purposes of section 1988. 506 U.S. at 114, 113 S.Ct. at 574 (holding that "the prevailing party inquiry does not turn on the magnitude of the relief obtained"). The Court then went on to decide what amount of fees such a plaintiff is entitled to recover when only nominal damages are recovered. The Court held that "[w]hen a plaintiff recovers only nominal damages *because of his failure to prove an essential element of his claim for monetary relief,* the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S.Ct. at 575 (citation omitted; emphasis added). In other words, a plaintiff's complete lack of success in obtaining monetary damages precludes an award of fees only when a plaintiff could have been entitled to monetary relief if she had succeeded on her claim.

In this case, however, Sheppard has not failed to prove an essential element of her claim for monetary relief under section 2000e–2(m) because, as a matter of express statutory language, she cannot obtain monetary relief. Her lack of success in obtaining a money judgment cannot therefore preclude an award of attorney's fees under section

**5.** As for "special circumstances" that a court "may" still consider under section 2000e–5(g)(2)(B), they are few. *See, e.g., Hatfield v. Hayes,* 877 F.2d 717, 720 (8th Cir.1989) ("special circumstances" exception is judicially created and should be narrowly construed); *Martin v. Heckler,* 773 F.2d 1145, 1150 (11th Cir.1985) (en banc) ("Defendants' good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion.") (citing *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 966 n. 4, 19 L.Ed.2d 1263 (1968) (per curiam)); *Wheatley v. Ford,* 679 F.2d 1037 (2d Cir.1982) (that an action provided a private benefit to a plaintiff rather than a public benefit to a class of similarly situated persons is not a special circumstance to deny § 1988 attorney's fees); *Staten v. Housing Auth.,* 638 F.2d 599 (3d Cir.1980) (that the case was "simple" or could be "routinely handled" does not justify denial of § 1988 attorney's fees); *Love v. Mayor, City of Cheyenne,* 620 F.2d 235 (10th Cir.1980) (defendant's good faith is not a special circumstance justifying the denial of attorney's fees under § 1988). We have previ-

ously said that under section 1988 a district court may deny a request for attorney's fees in its entirety when the amount requested by the prevailing party is so outrageously excessive as to shock the conscience of the court. *Fair Housing Council v. Landow,* 999 F.2d 92, 97–98 (4th Cir. 1993) (establishing guidelines that an applicant must meet before the district court may grant an award of fees). And the Supreme Court has said that a court has discretion to deny fees when the request has not been timely made. *White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 454, 102 S.Ct. 1162, 1168, 71 L.Ed.2d 325 (1982) ("Section 1988 authorizes the award of attorney's fees 'in [the] discretion' of the court. We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party."). In this case, Riverview concedes that Sheppard made a timely motion for attorney's fees and that she voluntarily reduced the amount requested by fifty percent. *See* Appellant's Br. at 8. I would therefore hold that there are no "special circumstances" presented here.

2000e–5(g)(2)(B).[6] Because a plaintiff in a mixed-motive case cannot recover money damages, a plaintiff's level of success must be measured against some other standard. The decision in *Farrar* focused on whether a plaintiff was awarded monetary damages where such damages were recoverable under the statute at issue. If the same analysis applied here, the correct inquiry would be whether the plaintiff obtained either declaratory or injunctive relief. Declaratory or injunctive relief is the only substantive relief that a plaintiff may recover under section 2000e–5(g)(2)(B). If it is granted, then the plaintiff has achieved a level of success which indicates that a grant of attorney's fees is also proper. To read any other prerequisite into the statute exceeds the teachings of *Farrar* and effectively replaces Congress's judgment with the judgment of this court.[7] Of course, that is exactly what the majority has done in this case. The majority suggests that merely establishing a violation of section 2000e–2(m) is not enough to merit a grant of attorney's fees because even when such a

violation is established, "few public goals" may be promoted. *Ante* at 1336. The majority therefore asserts that "in appropriate cases ... courts should consider the reasons why injunctive relief was or was not granted, or the extent and nature of any declaratory relief." *Id.* The majority then cites Justice O'Connor's concurring opinion in *Farrar* for the proposition that "the decision [in *Farrar* also] suggested a more general proportionality consideration as well: whether the public purposes served by resolving the dispute justifies the recovery of fees." *Id.* at 1336–37 (citing *Farrar,* 506 U.S. at 121–22, 113 S.Ct. at 578 (O'Connor, J., concurring)). And the majority concludes that:

> [W]ithin [the] category of [mixed-motive] cases, there are large differences. Some mixed-motive cases will evidence a widespread or intolerable animus on the part of a defendant; others will illustrate primarily the plaintiff's unacceptable conduct which, by definition, will have justified the action taken by the defendant. The statute allows district courts to distinguish

---

6. The district court recognized this fact when it rejected Riverview's argument that *Farrar* precluded altogether an award of attorney's fees:

 [Riverview's] position ignores the plain language of 42 U.S.C. § 2000e–5(g)(2)(B). Congress has spoken clearly, and the 1991 Act is quite explicit: the court "may grant ... attorney's fees" in cases in which a defendant is adjudged to have discriminated but proves that it would have made the same decision in the absence of the illegal motivating factor. 42 U.S.C. § 2000e–5(g)(2)(B). Denying recovery of attorney's fees in this situation on the rationale of "lack of success" would render the statute ineffective and practically meaningless. *Cf.* 2A Norman Singer, *Sutherland on Statutory Construction* § 46.06, at 119–20 (5th ed. 1992) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."); *United States Army Eng. Ctr. v. Federal Labor Relations Auth.,* 762 F.2d 409, 416–17 (4th Cir.1985); *Uptagrafft v. United States,* 315 F.2d 200, 204 (4th Cir.), *cert. denied,* 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 52 (1963). A wholesale denial of fees in this case is completely unjustified and flies in the face of the statute making such fees available.

 *Sheppard,* 870 F.Supp. at 1380–81.

7. In *Farrar* the plaintiff brought his complaint under 42 U.S.C. §§ 1983 and 1985, seeking $17 million in damages. The plaintiff had owned and operated a private school for delinquent, disabled, and disturbed teens. After a student

died at the school in 1973, a grand jury returned a murder indictment charging the plaintiff with willful failure to administer proper medical treatment and failure to provide timely hospitalization. The State of Texas also obtained a temporary injunction closing the school. In his complaint the plaintiff alleged that his civil rights had been violated: he claimed a deprivation of liberty and property without due process by means of conspiracy and malicious prosecution aimed at closing his school. A jury eventually found that five of the six named defendants had conspired against the plaintiff but that this conspiracy was not the proximate cause of the injury suffered by the plaintiff. The plaintiff was therefore awarded nominal damages of one dollar (*i.e.,* one seventeen millionth of what he wanted). After the case took an initial trip to the fifth circuit, the district court awarded the plaintiff $280,000 in attorney's fees. *Farrar,* 506 U.S. at 105–07, 113 S.Ct. at 570–71.

 It was against this backdrop that the Supreme Court decided that the recovery of nominal damages did not justify the award of any fees. *Id.* at 114–16, 113 S.Ct. at 574–76; *see id.* at 122, 113 S.Ct. at 578 (O'Connor, J., concurring) (Section 1988 "is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory. Yet one searches in vain for the public purpose this litigation might have served.").

among cases that are in reality quite different.

*Id.* at 1337.

While the majority's analysis has superficial appeal, it is based on a faulty premise. That is, the majority evidently believes that simply establishing liability in a common mixed-motive case serves few public goals. Whether that is true is not for us to decide. By enacting section 2000e–2(m) Congress has expressly decided that establishing liability in a mixed-motive case does in fact promote important public goals. Indeed, section 2000e–2(m) was enacted to help eliminate discrimination in the workplace by overruling the Supreme Court's decision in *Price Waterhouse v. Hopkins.* As the House Committee on the Judiciary stated in its Report on the Civil Rights Act of 1991:

> The Court's holding in *Price Waterhouse* severely undermines protections against intentional discrimination by allowing such discrimination to escape sanction completely under Title VII. Under this holding, even if a court finds that a Title VII defendant has clearly engaged in intentional discrimination, that court is powerless to end that abuse if the particular plaintiff who brought the case would have suffered the disputed employment action for some alternative, legitimate reason.

> The impact of this decision is particularly profound because the factual situation at issue in *Price Waterhouse* is a common one. As the Justice Department observed, "virtually every Title VII disparate treatment case will to some degree entail multiple motives." Brief for the United States as Amicus Curiae, at 6.

> If Title VII's ban on discrimination is to be meaningful, proven victims of intentional discrimination must be able to obtain relief, and perpetrators of discrimination must be liable for their actions.

H.R.Rept. 102–40(II) at 18 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 711; *see* H.R.Rept. No. 102–40(I), 102nd Cong., 1st Sess., at 48 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 586 ("the Committee endorses and intends Section 203 of the legislation to restore the decisional law in effect in many of the federal circuits prior to the decision in *Price Waterhouse* ").

Moreover, by enacting section 2000e–5(g)(2)(B), *Congress* decided that a successful plaintiff in a mixed-motive case is entitled to attorney's fees and costs. That congressional decision (along with the decision to enact section 2000e–2(m)) shows that sufficient public interests and goals are served and promoted to justify an award of fees whenever a violation of section 2000e–2(m) is established. And this is true even though a plaintiff's degree of success will be limited because she can not recover money damages and her eligibility for injunctive relief is limited. While this court may disagree with that decision, we must effectuate it nonetheless. Certainly, we *may not* eviscerate it, as the majority does here. *See Farrar,* 506 U.S. at 118, 113 S.Ct. at 577 (O'Connor, J., concurring) ("When construing a statute, this Court is bound by the choices Congress has made, not the choices we might wish it had made.").

What is most disturbing about the majority's approach is its failure to appreciate that the mere fact of establishing liability in any mixed-motive case serves a number of public goals, the most important of which is the eradication of discrimination in employment decisions. Because Congress expressly provides that discrimination in a mixed-motive case is still actionable discrimination, Congress recognizes that the successful eradication of discrimination depends in part on plaintiffs having the ability to bring Title VII claims, including Title VII claims that eventually evolve into mixed-motive cases.

The workplace is no place for discrimination, and the fact that an individual plaintiff may not recover monetary damages in a mixed-motive case does not undercut the deterrent value of allowing a plaintiff to establish liability in a mixed-motive case, especially when an employer faces the prospect of having to pay attorney's fees. Likewise, a grant of attorney's fees helps to eliminate

discrimination in the workplace because a prospective plaintiff is more likely to bring suit to enforce the provisions of Title VII if the plaintiff knows that she will be able to recover attorney's fees even if her case evolves into a mixed-motive case. Indeed, a grant of attorney's fees reflects Congress's decision that a plaintiff in an employment discrimination case acts not only to vindicate her own interests, but the interests of society as a whole by acting as a "private attorney general." *Cf. Farrar,* 506 U.S. at 122, 113 S.Ct. at 578 (O'Connor, J., concurring) (in the context of *Farrar's* section 1983 case "one searches in vain for the public purpose this litigation might have served."). The majority decision does not directly mention, much less address, these important public goals.[8]

### C.

A jury determined that Riverview discriminated against Sheppard in violation of section 2000e–2(m) of Title VII. The district court then granted Sheppard declaratory relief and

attorney's fees. There are no special circumstances in this case that would even remotely suggest that the district court should have exercised its limited discretion under section 2000e–5(g)(2)(B) to deny Sheppard an award of fees. *See supra* at 1344 n. 5. I would therefore hold that Sheppard is entitled to an award of attorney's fees.[9]

### II.

I turn now to the second question posed by a plain reading of section 2000e–5(g)(2)(B). If an award of attorney's fees is granted, what amount should be awarded? In light of the express statutory language contained in section 2000e–5(g)(2)(B), that question is simple and straightforward. The amount of attorney's fees the court should award is that "demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m)."

In particular, the issue of proportionality, which was paramount to the Supreme

8. In this case, which is one of first impression in this circuit, the EEOC continues to recognize the paramount importance that private plaintiffs have in enforcing Title VII. The EEOC has, accordingly, filed an *amicus* brief advocating that the district court's decision granting attorney's fees be upheld. As the EEOC says:
 > Private actions play an important role in effectuating the purpose of Title VII. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974). To encourage private actions, Congress has authorized the award of attorney's fees to plaintiffs who successfully prove a Title VII violation. *See* 42 U.S.C. §§ 2000e–5(k) & 2000e–5(g)(2)(B)(i)(sic). In this appeal, a defendant is challenging the district court's award of fees to a Title VII plaintiff on grounds, which if generally applied, would make it unlikely that plaintiffs would recover their fees in most cases involving mixed motives. Because the result urged by the defendant is not supported by the applicable statutory language and would significantly diminish the incentive Congress provided to victims of discrimination to vindicate their rights under Title VII, we offer our views to the Court.
 EEOC Br. at 1–2. Without doubt, these important public goals are seriously undermined by the court's decision today.

9. The majority's attempt to refute this conclusion is unavailing. The majority claims that it is anomalous for the proportionality considerations

of *Farrar* to apply to plaintiffs for whom discrimination is the sole cause of an adverse employment decision and, at the same time, fail to apply *these same considerations to mixed-motive plaintiffs. Ante* at 1338–1339. What, of course, the majority does not recognize is that a plaintiff who establishes that discrimination is the sole cause for an adverse employment decision will have little, if any, difficulty overcoming *Farrar's* proportionality hurdle. Thus, if there is an anomaly here, it is one in theory, not in fact.

Likewise, the majority's attempt to buttress its anomaly is equally unavailing. The majority lists several *hypothetical* circumstances that might render an award of fees unjust under section 2000e–5(g)(2)(B). *See id.* at 1338. While I certainly agree that a mixed-motive plaintiff who has committed an unlawful act such as embezzlement is not a candidate for a grant of attorney's fees, nowhere does Riverview even hint that Sheppard committed any act, unlawful or not, that would lead a court to deny her fees. The outcome that the statute requires does not "take money from the pockets of *plaintiffs* solely to deposit it in the pocket of attorneys." *Id.* (emphasis supplied). Instead, it takes money from a *defendant* that has practiced discrimination against one of its employees, and it gives plaintiffs such as Sheppard the confidence of knowing that they will be able to pay their attorney's fees even if their case evolves into one of mixed motive.

Court's decision in *Farrar*, is not relevant to the question of what amount of fees should be awarded under section 2000e–5(g)(2)(B). The statute itself makes this plain. Again, unlike both section 1988 and section 2000e–5(k), which provide a court with discretion to grant "a *reasonable* attorney's fee" (emphasis added), section 2000e–5(g)(2)(B) expressly dictates that the recoverable attorney's fee is the amount "directly attributable only to the pursuit of a claim under section 2000e–2(m)." There is no mention that the fee should be "reasonable," and thus, there is no need (and it is, in fact, improper) to engage in a proportionality determination. Because Congress has determined what is reasonable under section 2000e–5(g)(2)(B), Congress's standard must be applied.

The district court in this case followed the statutory directive and took great care in awarding a fee that was directly attributable only to the section 2000e–2(m) claim. *See Sheppard*, 870 F.Supp. at 1375–80 (reducing the amount of fees from $80,899.50 to $40,-000). Indeed, Sheppard herself voluntarily asked the district court for a reduced fee of $40,000. On remand, I have no doubt that the district court will meet with a host of difficulties in implementing the majority's substantial gloss on section 2000e–5(g)(2)(B). Nonetheless, because Sheppard established a violation of section 2000e–2(m) and was granted declaratory relief, I believe that she has achieved one hundred percent success for purposes of an award of attorney's fees under section 2000e–5(g)(2)(B). On remand, she should therefore again be entitled to the $40,000 in fees previously awarded.

### III.

Finally, the majority holds that a defendant's offer of judgment under Rule 68, Fed. R.Civ.P., in a mixed-motive case should bear on whether a plaintiff is entitled to attorney's fees and in what amount. *Ante* at 1337 ("That Rule 68 may not require plaintiffs to bear their own post-offer attorney's fees in § 2000e–5(g)(2)(B) cases does not, however, prohibit courts from considering a plaintiff's

rejection of a settlement offer as one factor affecting its decision whether to award fees and in what amount."). Given the plain language of the section 2000e–5(g)(2)(B), the majority is again wrong.

Because section 2000e–5(g)(2)(B) expressly differentiates between "attorney's fees *and* costs," whether an offer of judgment has been made under Rule 68 has no bearing whatsoever on the issues of whether to award fees and in what amount. Both section 1988 and section 2000e–5(k) make attorney's fees "part of costs." Therefore, if Congress had wanted Rule 68 to apply to attorney's fees under section 2000e–5(g)(2)(B), it would have also included that language in section 2000e–5(g)(2)(B). The difference in the statutory language unmistakably shows that Congress did not take this path. As the district court correctly recognized in this case:

> Rule 68 of the Federal Rules of Civil Procedure is a cost-shifting rule designed to encourage settlement of disputes without the burden of costly litigation. To invoke the rule, the defendant in an action may offer "to allow judgment to be taken against [the defendant]" in a specified amount with costs "then accrued." If the plaintiff does not accept this offer of judgment and "[i]f the judgment finally obtained by the [plaintiff] is not more favorable than the offer, the [plaintiff] must pay the costs incurred after making the offer." Fed.R.Civ.P. 68. . . .

. . . .

The central issue to be resolved is whether the Rule 68 shifting of post-offer "costs" should include plaintiff's post-offer attorney's fees. The Supreme Court has addressed this issue in a related context in *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Under *Marek*, the language of the underlying statute authorizing recovery of attorney's fees will determine whether attorney's fees are part of "costs" for Rule 68 purposes. 473 U.S. at 9, 105 S.Ct. at 3016. The statute at issue in *Marek*, 42 U.S.C. § 1988, clearly

made available to a prevailing party " 'attorney's fees *as part of the costs.*' " *Id.* (quoting 42 U.S.C. § 1988) (emphasis added). Based on this clear and unambiguous language, the Supreme Court directed that, in an action for attorney's fees under 42 U.S.C. § 1988, "costs" for Rule 68 purposes should include attorney's fees. *Id.*

The statutory provision governing recovery of attorney's fees in this case, 42 U.S.C. § 2000e–5(g)(2)(B), is unlike the statute at issue in *Marek.* Instead, it provides that the court may grant "attorney's fees *and costs.*" 42 U.S.C. § 2000e–5(g)(2)(B). In light of the emphasis on the "plain language" of the underlying statute, the words "attorney's fees and costs" in section 2000e–5(g)(2)(B) assume critical importance and contrast sharply with the statute at issue in *Marek,* in which attorney's fees were specifically described "as part of" costs ....

When it enacted 42 U.S.C. § [2000e–]5(g)(2)(B), Congress was well-aware of the *Marek* decision and the importance which the Supreme Court attributed to the distinction between the phrases "attorney's fees and costs" and "attorney's fees as part of costs." Indeed, the committee reports accompanying the 1991 Act include sharp criticism of the *Marek* opinion, speak of the need to "address" and "overrule" *Marek,* and disprove of the Supreme Court's reliance on "small and probably inadvertent differences in phrasing" and *"an accident* in legislative drafting." H.R.Rept. No. 102–40(I), 102nd Cong., 1st Sess., at 82 & n. 77 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 620; H.R.Rept. 102–40(II), *reprinted in* 1991 U.S.C.C.A.N. 694, 696, 724 ....

. . . .

In sum, the *Marek* decision, the legislative history of the Civil Rights Act of 1991, familiar principles of statutory construction, and the public interest in vigorous enforcement of Title VII together direct that attorney's fees under 42 U.S.C.

§ 2000e–5(g)(2)(B) must be considered separate from costs in the operation of Rule 68.

*Sheppard,* 870 F.Supp. at 1381–84 (citations and footnotes omitted).

There should be no disputing this analysis. No doubt Congress chose to allow a mixed-motive plaintiff "attorney's fees and costs" because (1) a mixed-motive plaintiff cannot recover money damages and (2) a mixed-motive case generally evolves into one as the litigation progresses. Thus, an offer of judgment under Rule 68 would always exceed the amount actually recovered, and a substantial part of the fees "directly attributable" to pursuit of a mixed-motive claim would likely be incurred after the offer is made. And, accordingly, if Congress had made attorney's fees part of costs, a plaintiff in a mixed-motive case would not be able to recover most of her fees "directly attributable" to pursuit of a claim under section 2000e–2(m). Such a result—which the majority now sanctions under section 2000e–5(g)(2)(B)—frustrates Congress's judgment that a mixed-motive employment decision is actionable discrimination.

\* \* \*

The majority's rewrite of section 2000e–5(g)(2)(B) to reflect its own view as to whether and to what extent attorney's fees should be awarded thwarts the plain intent of Congress to encourage the exposure of discriminatory employment decisions. Again, I respectfully dissent.